Gail C. Lin (SBN 212334)
RAISNER ROUPINIAN LLP
2945 Townsgate Road, Suite 200
Westlake Village, CA 91361
Telephone: (212) 221-1747
Fax: (212) 221-1747
Email: gcl@raisnerroupinian.com

Jack A. Raisner (*pro hac vice forthcoming*)
René S. Roupinian (*pro hac vice forthcoming*)
RAISNER ROUPINIAN LLP
270 Madison Avenue, Suite 1801
New York, NY 10016
Telephone: (212) 221-1747
Fax: (212) 221-1747
Email: jar@raisnerroupinian.com
Email: rsr@raisnerroupinian.com

*Attorneys for Plaintiffs Dominick Alcantara and Mario Gonzalez, on behalf of themselves and all others similarly situated*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## EASTERN DIVISION

| | |
|---|---|
| DOMINICK ALCANTARA and MARIO GONZALEZ, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>UNITED FURNITURE INDUSTRIES, INC., UFI CALIFORNIA, INC., UFI TRANSPORTATION, LLC, LANE FURNITURE, INC., LS LOGISTICS, INC., STAGE CAPITAL, LLC, and DAVID BELFORD,<br><br>    Defendants. | CASE NO. _____<br><br>**CLASS ACTION COMPLAINT FOR**<br><br>**(1) VIOLATION OF WARN ACT 29 U.S.C. § 2101, ET SEQ.,**<br><br>**(2) VIOLATION OF CALIFORNIA LABOR CODE § 1400 ET. SEQ.,**<br><br>**(3) VIOLATION OF CALIFORNIA LABOR CODE § 201 ET. SEQ. and**<br><br>**(4) VIOLATION OF NORTH CAROLINA WAGE AND HOUR ACT §§ 95-25.1 ET SEQ.** |

Plaintiffs Dominick Alcantara and Mario Gonzalez ("Plaintiffs") allege on behalf of themselves and the putative class of those similarly situated as follows:

**NATURE OF THE ACTION**

1.      Defendant United Furniture Industries, Inc. ("UFI") and its affiliates produce and distribute furniture to retail customers across the country.

2.      Plaintiffs and the other similarly situated former employees worked for Defendants until November 21, 2022, when late that night, they were notified via electronic delivery that they were terminated, effective immediately, except for the freight drivers on the road who were terminated upon the completion of their trips, days later.

3.      Plaintiffs, along with an estimated 2,700 other employees, were terminated without any advance written notice.

4.      Most employees were not paid for their final week of work, ending November 18, when normally would have been paid by Friday, November 25, or for work performed on November 21 or thereafter.

5.      No employees were paid for their accrued paid time off (i.e., vacation).

6.      Plaintiffs bring this action on behalf of themselves and the other similarly situated former employees who worked for Defendants and who were terminated without cause, as part of, or as the result of, the mass layoffs, plant closings, or termination of a covered establishment ordered by Defendants on or about November 21, 2022 and within thirty (30) days of that date, and who were not provided 60 days' advance written notice of their terminations by Defendants, as required by the Worker Adjustment and Retraining Notification Act ("WARN Act"), 29 U.S.C. § 2101 *et seq*., and the California Labor Code § 1400 *et. seq*. ("CAL-WARN Act").

7.      Plaintiffs, on behalf of themselves and all similarly situated employees, seek to recover 60 days' wages and benefits, pursuant to 29 U.S.C. § 2104 and California Labor Code § 1402, from Defendants.

8.      Plaintiffs on behalf of themselves and all similarly situated employees, seek to be paid their accrued paid time off ("PTO") and wages for all employees under all relevant state laws.

9.      Plaintiffs on behalf of themselves and all similarly situated employees also seek to recover under California state laws for Defendants' failure to pay wages owed for their final week

of work, unused paid time off, and to issue a final paystub,  and waiting time penalties, for themselves and the other similarly situated employees who worked in California.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331,  1367, 29 U.S.C. § 2104(a)(5).

11.     Venue in this Court is proper pursuant to 29 U.S.C. § 2104(a)(5).

12.     The Court has jurisdiction over Defendants because they did business in this District and a substantial part of the events giving rise to Plaintiffs' claims occurred in this District.

## THE PARTIES

### *Plaintiffs*

13.     Plaintiff Dominick Alcantara was employed by Defendants as a driver and worked at, reported to, was assigned to, or received his assignments from Defendants' facility located at 13133 Innovation Way, Ste. 200, Victorville, CA 92394 (the "Victorville Facility") until his termination on or about November 21, 2022.

14.     Plaintiff Mario Gonzalez was employed by Defendants as Director of Operations and worked at, reported to, was assigned to, or received his assignments from Defendants' Victorville Facility until his termination on or about November 21, 2022.

15.     Plaintiffs are both residents of the state of California.

16.     Plaintiffs were terminated without 60 days' written notice.

17.     Plaintiffs were terminated without cause.

18.     On information and belief, an estimated 2,700 similarly situated former employees who worked at the Victorville Facility, and other facilities in Mississippi, North Carolina and Ohio as defined by the WARN Act and CAL-WARN Act (together, the "Facilities"), were also terminated on or about November 21, 2022 without 60 days' written notice.

### *Defendants*

19.     Upon information and belief and at all relevant times, Defendant United Furniture Industries, Inc. ("UFI") is a Delaware corporation with its headquarters in Tupelo, Mississippi.

20.     Upon information and belief and at all relevant times, Defendants UFI California, Inc., UFI Transportation, LLC, Lane Furniture, Inc., and LS Logistics, Inc. were UFI's affiliated companies, owned by, and operating under, a holding company, Defendant Stage Capital, LLC. ("Stage Capital").

21.     Upon information and belief and at all relevant times, Defendant Stage Capital is an Ohio limited liability company with its principal place of business at 501 Morrison Road, Suite 100, Gahanna, Ohio 43230.

22.     Upon information and belief, Defendant David Belford ("Belford") is an individual who is a citizen and resident of Naples, Florida 34102.

23.     Upon information and belief, Stage Capital was founded in 2005 by Belford.

24.     Upon information and belief,  Belford owns Stage Capital and therefore owns, owns and operates UFI and other affiliates.

25.     On multiple occasions, Belford would occasionally attend leadership meetings at UFI headquarters, and it was generally understood that the was the "money man" from Stage Capital where significant decisions emanated from, such as the replacement of UFI's long-standing CEO and CFO in 2022 with individuals who had previously held low-level managerial positions.

26.     Until on or about November 21, 2022, Plaintiffs and the similarly situated employees were employed by Defendants and worked at or reported to the Facilities.

27.     Around 10:14 p.m. PST on November 21, 2022, Plaintiffs and the similarly situated employees received a text message from Defendants notifying them, as well as all other UFI employees, that they were terminated effective immediately.

28.     Upon information and belief and at all relevant times, Defendants, as a single employer, made the decision to terminate Plaintiffs and the similarly situated employees on November 21, 2022.

29.     Defendants failed to provide sixty (60) days advance written notice (or any advance notice at all) to Plaintiffs of their impending layoff.

30.     Defendants failed to pay 60 days' wages and benefits to Plaintiffs and the other similarly situated former employees in lieu of 60 days' written notice.

## WARN ACT CLASS ALLEGATIONS Under 29 U.S.C. § 2104(a)(5)

31.     Plaintiffs are aggrieved "person(s) seeking to enforce such liability" and are authorized by Congress to "sue either for [themselves] or for other persons similarly situated, or both" by Congress. 29 U.S.C. § 2104(a)(5).

32.     Plaintiffs bring this action on behalf of themselves and all other similarly situated former employees of Defendants who worked at or reported to the Facilities and were terminated without cause beginning on or about November 21, 2022 and within 30 days of that date, or as the reasonably foreseeable consequence of the mass layoffs or plant closings ordered by Defendants on that date, pursuant to 29 U.S.C. § 2104(a)(5).

33.     The persons in the Class identified above ("Class Members") are so numerous that joinder of all members is impracticable.  Although the precise number of such persons is unknown, the facts on which the calculation of that number can be based are presently within the sole control of Defendants.

34.     On information and belief, the identity of the members of the class and the recent residence address of each of the Class Members is contained in the books and records of Defendants.

35.     On information and belief, the rate of pay and benefits that were being paid by Defendants to each Class Member at the time of his/her termination is contained in the books and records of the Defendants.

36.     There are questions of law and fact common to the Class Members that predominate over any questions affecting individual members.

37.     There are questions of law and fact common to the Class Members that predominate over any questions solely affecting individual members of the Class, including but not limited to:

            (a)     whether the Class Members were employees of the Defendants who

                    worked at or reported to the Facilities;

(b)     whether Defendants terminated the employment of the Class Members without cause on their part and without giving them 60 days' advance written notice; and

(c)     whether Defendants paid the Class members 60 days' wages and benefits as required by the WARN Act.

38.     Plaintiffs' claim is typical of those of the WARN Class.  Plaintiffs, like other WARN Class members, worked at or reported to the Facilities and were terminated without cause on or about November 21, 2022, due to the mass layoffs ordered by Defendants.

39.     Plaintiffs will fairly and adequately protect the interests of the WARN Class. Plaintiffs have retained counsel competent and experience in complex class actions, including the WARN Act and employment litigation.

40.     Class certification of these claims is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the WARN Class predominate over any questions affecting only individual members of the WARN Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of WARN Act litigation, where individual Plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate Defendants, and damages suffered by individual WARN Class members are small compared to the expense and burden of individual prosecution of this litigation.

41.     Concentrating all the potential litigation concerning the WARN Act rights of the members of the Class in this Court will obviate the need for unduly duplicative litigation that might result in inconsistent judgments, will conserve the judicial resources and the resources of the parties and is the most efficient means of resolving the WARN Act rights of all the members of the Class.

42.     Plaintiffs intend to send notice to all members of the WARN Class to the extent required by Rule 23.

43.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy – particularly in the context of WARN Act litigation, where individual Plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate Defendants.

**CALIFORNIA WARN CLASS ALLEGATIONS, Cal. Labor Code § 1401**

44.     Plaintiffs bring the Second Claim for Relief for violation of Labor Code § 1401 on behalf of themselves and a class of similarly situated persons pursuant to Labor Code § 1404 and Federal Rules of Civil Procedure, Rule 23(a) and (b), who worked at or reported to Defendants' Facilities and were terminated without cause beginning on or about November 21, 2022 (the "CAL WARN Class")

45.     The persons in the CAL WARN Class identified above ("CAL WARN Class Members") are so numerous that joinder of all members is impracticable.  Although the precise number of such persons is unknown, the facts on which the calculation of that number can be based are presently within the sole control of Defendants.

46.     On information and belief, the identity of the members of the class and the recent residence address of each of the CAL WARN Class Members is contained in the books and records of Defendants.

47.     On information and belief, the rate of pay and benefits that were being paid by Defendants to each CAL-WARN Class Member at the time of his/her termination is contained in the books and records of Defendants.

48.     Common questions of law and fact exist as to members of the CAL-WARN Class, including, but not limited to, the following:

        (a)     whether the members of the CAL-WARN Class were employees of the Defendants;

        (b)     whether Defendants unlawfully terminated the employment of the members of the CAL-WARN Class without cause on their part and without giving them 60 days advance written notice in violation of the CAL-WARN Act; and

        (c)     whether Defendants unlawfully failed to pay the CAL-WARN Class members 60 days wages and benefits as required by the CAL-WARN Act.

49.     The CAL WARN Class Plaintiffs' claims are typical of those of the CAL-WARN Class.  The CAL WARN Class Plaintiffs, like other WARN Class members, worked at or reported

to one of the Facilities and were terminated on or about November 21, 2022, due to the terminations ordered by Defendants.

50.     The CAL WARN Class Plaintiffs will fairly and adequately protect the interests of the CAL WARN Class.  The CAL WARN Class Plaintiffs have retained counsel competent and experienced in complex class actions on behalf of employees, including the CAL WARN Act, the federal WARN Act, other similar state laws, and employment litigation.

51.     Class certification of these Claims is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the CAL-WARN Class predominate over any questions affecting only individual members of the CAL-WARN Class, and because a class action superior to other available methods for the fair and efficient adjudication of this litigation  – particularly in the context of CAL-WARN Class Act litigation, where individual Plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate Defendants, and damages suffered by individual CAL-WARN Class members are small compared to the expense and burden of individual prosecution of this litigation.

52.     Concentrating all the potential litigation concerning the CAL-WARN Act rights of the members of the Class in this Court will obviate the need for unduly duplicative litigation that might result in inconsistent judgments, will conserve the judicial resources and the resources of the parties and is the most efficient means of resolving the CAL-WARN Act rights of all the members of the Class.

53.     The CAL WARN Class Plaintiffs intend to send notice to all members of the CAL WARN Class to the extent required by Rule 23.

## FIRST CLAIM FOR RELIEF
## FEDERAL WARN ACT, U.S.C. § 2104 ET SEQ.

54.     Plaintiffs reallege and incorporates by reference all allegations in all preceding paragraphs.

55.     At all relevant times, Defendants employed more than 100 employees who in the aggregate worked at least 4,000 hours per week, exclusive of hours of overtime, within the United

States.

56.     At all relevant times, Defendants were an "employer," as that term is defined in 29 U.S.C. § 2101 (a)(1) and 20 C.F.R. § 639.3(a)(1).

57.     At all relevant times, Plaintiffs and the other similarly situated former employees were employees of Defendants as that term is defined by 29 U.S.C. §2101.

58.     On or about November 21, 2022, and within 30 days thereafter, Defendants ordered mass layoffs and/or plant closing at the Facilities, as that term is defined by 29 U.S.C. § 210l(a)(2).

59.     The mass layoffs at the Facilities resulted in "employment losses," as that term is defined by 29 U.S.C. § 2101(a)(2) for at least fifty of Defendants' employees as well as more than 33% of Defendants' workforce at the Facilities, excluding "part-time employees," as that term is defined by 29 U.S.C. § 2l01(a)(8).

60.     Plaintiffs and the Class Members were terminated by Defendants without cause on their part, as part of or as the reasonably foreseeable consequence of the mass layoffs ordered by Defendants at the Facilities.

61.     Plaintiffs and the Class Members are "affected employees" of Defendants, within the meaning of 29 U.S.C. § 210l(a)(5).

62.     Defendants were required by the WARN Act to give Plaintiffs and the Class Members at least 60 days' advance written notice of their terminations.

63.     Defendants failed to give Plaintiffs and the Class members written notice that complied with the requirements of the WARN Act.

64.     Upon information and belief, the Defendants UFI, UFI California, Inc., UFI Transportation, LLC, Lane Furniture, Inc., and LS Logistics, Inc., were  "subsidiaries which are wholly or partially owned by a parent company", Stage Capital, LLC, and "are treated "as a part of" Stage Capital, LLC based on their lack of " independence from the parent."  Based on, inter alia,  common ownership, common directors and/or officers, de facto exercise of control, unity of personnel policies emanating from a common source, and the dependency of operations.  20 C.F.R. § 639.3(a)(2).

COMPLAINT

65.     As an integrated enterprise, the Defendants represented themselves as employers using their names interchangeably, or without specific corporate identification, or in the aggregate as one company.

66.     Some senior managers received termination orders on the night of November 21 from "United/Lane Corporate Communications <corpcomm@lanefurniture.com>" which instructed them to tell employees of UFI, Lane, and United Furniture Industries Transportation not to come to work the next day.

67.     Defendants specifically referred their termination of the employees as an action undertaken one single company, making no differentiation between parent, subsidiaries, or Board of Directors.

68.     When informing employees that they were terminated, Lane Furniture began the email as follows: "By instruction of the Board of Directors of United Furniture, Inc. and all subsidiaries (the "Company"), we regret to inform you that due to unforeseen business circumstances the Company has been forced to make the difficult decision to terminate the employment of all its employees."

69.     Upon information and belief, the decision to terminate the employees without advance notice as required under the WARN Acts was made or controlled by Stage Capital, LLC, and to withhold payment and ERISA benefits in lieu of such notice.

70.     The subsidiary Defendants depended on each other and on Stage Capital for their operations any self-determination they had in operating day-to-day was overwhelmed and negated by Stage Capital which was responsible for decision that forced the subsidiaries to carry out the shutdown.

71.     Plaintiffs, and each of the Class Members are, "aggrieved employees" of the Defendants as that term is defined in 29 U.S.C. § 2104 (a)(7).

72.     Defendants failed to pay Plaintiffs and each of the Class Members their respective wages, salary, commissions, bonuses, incentives, accrued holiday pay and accrued vacation for 60 days following their respective terminations and failed to make the pension and 401(k)

COMPLAINT

contributions and provide employee benefits under ERISA, other than health insurance, for 60 days from and after the dates of their respective terminations.

## SECOND CLAIM FOR RELIEF

## VIOLATION OF CALFORNIA WARN ACT LAB. CODE,  § 1400 *et. seq.*

73.     Plaintiffs reallege and incorporates by reference all allegations in all proceeding paragraphs.

74.     Plaintiffs bring the Second Claim for Relief for violation of Lab. Code § 1401 on behalf of themselves and a class of similarly situated persons pursuant to Lab. Code § 1404 and Federal Rules of Civil Procedure 23(a) and (b), who worked at, reported to, or received assignments from the Facilities and were terminated without cause on or about November 21, 2022 and within 30 days of that date (the "CAL-WARN Class").

75.     Pursuant to Lab. Code § 1400(b), "'[e]mployer' means any person . . . who directly or indirectly owns and operates a covered establishment.   A parent corporation is an employer as to any covered establishment directly owned and operated by its corporate subsidiary."

76.     Upon information and belief and at all relevant times, Defendants Stage Capital and Belford were employers of the CAL-WARN Class as that term is defined by Lab. Code § 1400(b) because they directly or indirectly owned and operated at least one covered establishment in Victorville California that employed several hundred employees, and Stage Capital is an employer because it is a parent corporation having owned and operated that California facility which was a covered establishment.

77.     Defendants violated CAL-WARN by terminating Plaintiffs' employment and the employment of other similarly situated employees pursuant to a "mass layoff," "relocation" or "termination" as defined in Lab. Code § 1400 on or about November 21, 2022 or thereafter,  without giving written notice at least 60 days before the order took effect to: (1) the employees affected by the order and (2) the Employment Development Department, the local workforce investment board, and the chief elected official of each city and county government within which the mass layoff, relocation or termination occurred. The "mass layoff," "relocation" or "termination" was not

necessitated by a physical calamity or act of war.

78.     As a result of Defendants' violation of Lab. Code § 1401, Plaintiffs and the other similarly situated employees are entitled to 60 days of back pay under Lab. Code § 1402(a-b).

79.     Plaintiffs have incurred attorneys' fees in prosecuting this action and is entitled to an award of attorneys' fees under Cal. Lab. Code § 1404.

## THIRD CLAIM FOR RELIEF

## VIOLATION OF CALFORNIA WAGE LAWS:  LAB. CODE  § 203

80.     Plaintiffs reallege and incorporates by reference all allegations in all proceeding paragraphs.

81.     Plaintiffs seek to recover under California state laws for Defendants' failure to pay wages owed for their final week of work, unused paid time off, and to issue a final paystub, and waiting time penalties, for themselves and the other similarly situated employees who worked in California.

82.     Pursuant to Cal. Lab. Code §§ 201 and 227.3, upon the discharge of Plaintiffs and the other similarly situated former employees on November 21, 2022, their earned and unpaid wages, including unused vacation pay, became due and payable immediately.

83.     In violation of Cal. Lab. Code § 203, Defendants failed to issue to Plaintiffs and the other similarly situated former employees their final paychecks, in full and itemized statements, upon discharging them from their employment on November 21, 2022.

84.     Defendants, as employers that willfully failed to pay in accordance with Cal. Lab. Code § 201 and 227.3, are liable to Plaintiffs and the other similarly situated former employees waiting time penalties of up to 30 days' wages. Defendants' failure to pay accrued vacation wages upon termination was willful.

85.     Defendants' failure to pay accrued vacation wages upon termination represents a violation of Labor Code sections 201 and 227.3 (and IWC Wage Order 8) and as such those wages continue as a penalty under Labor Code § 203.

86.     Defendants Belford caused this violation and is personally liable for the unpaid

COMPLAINT

accrued vacation and continuing penalties pursuant to Labor Code § 558.1.

87.     Upon information and belief, Defendants exercised control over the workers' wages (including the decision over whether to pay out the vacation wages upon termination), hours, or working conditions, (b) suffered and permitted them to work, and/or (c) engaged them, thereby creating a common law employment relationship.

88.     Defendants Belford was therefore an employer of Plaintiffs and those similarly situated and are liable for all unpaid accrued vacation wages and penalties as an employer.

89.     Plaintiffs will seek to certify a subclass of these similarly situated individuals to the extent necessary

90.     Plaintiffs will seek to certify a subclass of these similarly situated individuals to the extent necessary.

**FOURTH CLAIM FOR RELIEF**

**VIOLATION OF NORTH CAROLINA WAGE LAW:  §§ 95-25.1 ET SEQ. AND OF OTHER STATE LAWS**

91.     Plaintiffs reallege and incorporates by reference all allegations in all proceeding paragraphs.

92.     Under N.C. Gen. Stat. § 95-25.1 et seq. the North Carolina Wage and Hour Act ("NCWHA"), an employer must pay final wages to discharged employees through the regular payroll method used by the employer, unless the employee(s) makes a written request for a live check to be sent by trackable mail.

93.     Under the NCWHA, employees whose employment is discontinued for any reason must be paid all wages due on or before the next regular payday.

94.     Plaintiffs who worked in Defendants' Facilities in North Carolina and were terminated on November 21, 2022, were to be paid all wages due on November 25, 2022 but were not.

95.     Under the NCWHA, "wage benefits" are benefits such as, but not limited to, vacation pay (including PTO and PDO leave), sick leave, jury duty pay, and holiday pay.

COMPLAINT

96.     Plaintiffs who worked in Defendants' Facilities in North Carolina were promised vacation pay by Defendants prior to the terminations, pursuant to company policy, practice, or an employment contract.

97.     Upon their terminations, Plaintiffs who worked in Defendants' Facilities in North Carolina, were entitled to payment of unused vacation from Defendants, none of which has been paid.

98.     Due to Defendants' violation of N.C. Gen. Stat. § 95-25.1 et seq., Defendants are liable for civil penalty of up to two hundred fifty dollars ($250.00) per employee with the maximum not to exceed two thousand dollars ($2,000) per violation.

99.     Plaintiffs seek to recover unpaid wages and accrued paid time off for all similarly situated employees entitled to such wages and benefits, under the laws of the respective states in which they worked prior to their termination on or about November 21, 2022.

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, the Plaintiffs, on behalf of themselves and all other similarly situated persons, pray for the following relief as against Defendants:

A.     Certification that, pursuant to Fed. R. Civ. P. 23 (a) and (b), Plaintiffs and the other similarly situated former employees constitute a single class;

B.     Designation of the Plaintiffs as Class Representatives;

C.     Appointment of the undersigned attorneys as Class Counsel;

D.     A judgment in favor of Plaintiffs and each of the "affected employees" equal to the sum of: their unpaid wages, salary, commissions, bonuses, accrued holiday pay, accrued vacation pay, pension and 401(k) contributions and other ERISA benefits, for 60 days, that would have been covered and paid under the then-applicable employee benefit plans had that coverage continued for that period, all determined in accordance with the WARN Act, 29 U.S.C. § 2104(a)(1)(4) and the California Labor Code § 1402(a);

E.     A judgment in favor of Plaintiffs and each similarly situated employee whose rights under Cal. Lab. Code §§ 201 and 227.3, for wages owed, including unused vacation, and waiting time penalties;

F.     A judgment in favor of all similarly-situated employees for any unpaid wages and accrued vacation or paid time off benefits, under the laws of the respective states in which they worked prior to their termination on or about November 21, 2022.

G.     Interest as allowed by law on the amounts owed under the preceding paragraphs;

H.     Plaintiffs' reasonable attorneys' fees and the costs and disbursements that the Plaintiffs incurred in prosecuting this action, as authorized by the WARN Act, 29 U.S.C. § 2104(a)(6) and Cal. Lab. Code § 1404; and

I.     Such other and further relief as this Court may deem just and proper.


DATED: November 28, 2022          Respectfully submitted,

                                  By: /s/ *Gail C. Lin*
                                  Gail C. Lin (SBN 212334)
                                  RAISNER ROUPINIAN LLP
                                  2945 Townsgate Road, Suite 200
                                  Westlake Village, CA 91361
                                  Telephone: (212) 221-1747
                                  Fax: (212) 221-1747
                                  Email: gcl@raisnerroupinian.com

                                  Jack A. Raisner (*pro hac vice forthcoming*)
                                  René S. Roupinian (*pro hac vice forthcoming*)
                                  RAISNER ROUPINIAN LLP
                                  270 Madison Avenue, Suite 1801
                                  New York, NY 10016
                                  Telephone: (212) 221-1747
                                  Fax: (212) 221-1747
                                  Email: jar@raisnerroupinian.com
                                  Email: rsr@raisnerroupinian.com

                                  *Attorneys for Plaintiffs and the other similarly situated former employees*